In the Ellis case, the court explained why the invention in Diamond v. Deere was patent eligible even though it involved a well-known mathematical equation, an ineligible concept. The claim succeeded because it used the equation in a process designed to solve a technological problem in conventional industry practice. The claims here don't incorporate any formula, do they? Don't incorporate. Do not incorporate the formula which you say leads to an unprecedented technique. The claims are very broad. They don't say anything about using the particular formula which was worked out here. Well, the processing step does incorporate laws of nature and the measuring step is the additional step that adds the inventive concept. No, but what I'm asking you is that the claims here are extremely broad. They aren't addressing the thing that the inventor here supposedly invented. They are much broader than that. They don't say here we worked out this formula, we figured out how to do this. It just says any way of doing it is covered. There's no, that's not an obstacle to patent eligibility, the fact that you've described the laws of nature that are to be applied to the inventive step. It was never... But preemption is the underlying concern here. Yes. If you choose to frame your claims, to write your claims in a way that covers everything, you suffer the consequences of that. And I'm not sure why these claims don't include, for example, using that as a surrogate for body temperature. It doesn't say anything about the mechanism or the technique that was supposedly invented here. But what it does do is that it provides a step that is not routine, not conventional, not well understood toward establishing and determining body temperature. It describes a step, but it doesn't tell us how. What's missing here is the how. So all you're left with is a method for measuring body temperature. Well, the method for measuring body temperature cannot be performed without first determining the temperature based on a radiation measurement or a temperature measurement. It doesn't talk about radiation measurement, the claims. Claim 54 does. Claim 51 deals with temperature. It talks about measuring radiation, but it doesn't tell us how you're going to measure the radiation. I assume that when my mother used to put her hand on my forehead and say, you're running a fever, I don't know, maybe she was measuring radiation. Maybe she was measuring, well, one way or the other, that's all that your claims are left with. You describe a method, the claims are directed to a method, and there's nothing else. There's no how to this. So what you're just left with is the laws of nature. The law of nature is embodied only in the processing step. Taking a measurement at the forehead is not a law of nature. It may involve laws of nature, but that doesn't mean it's directed to a law of nature. But it's conventional. It's conventional. It's well known, right? It's conventional only in the sense that people could, once were able to use, let's say, liquid crystal strips on the forehead and measure a forehead temperature, but it was not well known or conventional in the context of determining body temperature. Indeed, there's undisputed... Excuse me? That people putting a hand on someone's forehead wasn't well known and conventional as a way of determining whether somebody has a fever? Well, that was never able to produce a medically significant temperature. Well, wait a second. There's nothing in the claim here about a medically significant temperature. Where does it say that? It says that it establishes a body temperature approximation. But it doesn't say medically significant. No, but I'm merely trying to distinguish between putting the hand on the forehead... The problem is that the claim is written so broadly that it includes measuring temperature by feeling someone's forehead, doesn't it? No, because you have to apply laws of nature and an algorithm in order to get to the body temperature. There's no mention of an algorithm here or the computations that are described in the specification. But the processing step does refer to laws of nature. Basically, the simple laws of thermodynamics of going from cooler to hotter. And it takes into account all of those factors. Show me in the claim where you had the limitation of an algorithm. The claim does not mention any algorithm. It merely states, though, that it provides based on heat flow from an internal body temperature to ambient temperature. That stuff, that includes putting your hand on someone's forehead? No, you might say that the measuring step can cover putting your hand on someone's forehead. But it doesn't get you to body temperature. The key difference between this case and many of the other cases is that this added step, the one that's not the law of nature, was not known, was not routine, not conventional, or well understood in the context of determining a body temperature. When you look at cases like Mayo, the added steps were well known and routine among doctors who prescribed that theopurine drug that was at the center of that case. Or in Ariose, even, the added steps were well known among those skilled in analyzing DNA. But in this case, measuring radiation or temperature at the forehead was not routine or conventional among scientists trying to determine body temperature. In fact, undisputed evidence that it had not been done, also undisputed evidence that there was widespread skepticism among the most established people in the thermometry trade that it could not be done. What better evidence is there? What could not be done? Coming up with a medically significant measurement? An accurate measurement? If you look at what the standards organization that we cite that was placed into evidence at the district court, the ASTM, it said that body temperature could not be derived from skin temperature at any region of the body. They're talking about an accurate measurement, right? As I was saying before, it's not in the claim. A medically significant, one that a doctor or a nurse could rely on. Well, there's your problem. It's not in the claim. It doesn't say medically significant in the claim. It does say we are going from, A, a skin temperature at the forehead, and we are determining through laws of nature a body temperature. That's something that could not be done by putting your hand on someone's forehead. When you say body temperature, when I read the pen, it seemed to me that if you're going to say that something's innovative here, it's that you're measuring the core temperature of a human body, meaning almost the temperature of the heart. Right. Right? Is that correct? Well, the core temperature, not internal temperature, because I guess, you know, the forehead, that includes internal temperature. Really what you're talking about is the core temperature of the human body. Yeah, but the forehead temperature is not body temperature. It may give you a rough estimate based on the age-old practice of putting a hand there, but it does not give you, it does not tell you what the body temperature is based on how hot it is outside, how cold it is outside, whether the patient had just been running. Okay, so it's more than just putting the hand on the forehead. And when I ask you where is that in your claim, what are those limitations? Well, the limitations are that it's limited to skin of the forehead. And to answer Judge Dyke's concern about preemption, this claim leaves it open to others to use these laws of thermodynamics, not only in any field, but even in the field of thermometry. It does not prevent them from using those laws of thermodynamics. The inventive concept here was to use those laws at the region of skin of the forehead, and not only to measure temperature, but under Claim 54, which is entitled to its own preemption analysis, the question is, was measuring radiation to determine a body temperature ever done? And there's undisputed evidence that that likewise had not been done. It was not a routine, well-understood, or conventional step in the field of determining body temperature. This is a... Well, you're not... All you're doing by putting the hand on the forehead is feeling whether it's warm or cool or a little too warm. I'm trying to find an approximation of whether it's normal body temperature or not. No, you're not determining body temperature. You're just measuring skin temperature, which is a radically different measurement. But you're getting an approximation, albeit a lamest approximation, but you're getting an approximation of one way or the other of the body temperature when you do that. Well, there's evidence in the record that the disparity between what you might measure in terms of skin temperature of the forehead... And granted, accuracy may not be there. I mean, it may be more accurate to measure the radiation, as you say, but again, what I find missing here is you don't explain how you're going to do that. What are the measuring steps? All you tell me is a function. All you're doing, and when you're left with that, it seems to me you're starting out with laws of nature and you're ending up with a law of nature. You talk about an algorithm. Where is the algorithm? The thing is that we're not starting with a law of nature. We are using laws of nature in the processing step. But taking a measurement of the forehead is not a law of nature itself. It may have been a well-known process or it was a process that people knew how to do. But to answer your question more directly, measuring someone's skin of the forehead simply does not tell you what the person's body temperature is. It might tell you what his forehead temperature is. And that's a key distinction in the medical field. It's a surrogate for body temperature. People say, feel the forehead, see if the person has a temperature. They're talking about body temperature. They're not talking about forehead temperature. If that were true, Your Honor, there'd be no real market for thermometers and doctors and nurses would not be hustling to find the best and most convenient way to measure body temperature. But you see our problem. It's with the breadth of the claim. What you're asking for is somehow measuring temperature at the forehead, period. But measuring temperature at the forehead either through conduction under Claim 51 or via radiation under Claim 54. But the fact that it was known that you could measure skin temperature at the forehead is not a knock against the eligibility. Here's a direct quote from Diamond V. Deere. It is now commonplace that an application of a law of nature to a known process may well be deserving of patent protection. In this case, what I'm saying is that it may have been a known process that you could measure the temperature of the skin of the forehead, but it was not known that you could derive body temperature by applying the laws of thermodynamics to it. The fact is that this is a watershed invention. Before this invention came along, for centuries, only invasive means of thermometry were available by sticking a thermometer into a mouth, a rectum, or the like. And this introduced to the world an era of non-invasive thermometry. And the claims may be deceptive in their simplicity, but the fact is that it was not well-known, routine, or conventional in the field of thermometry to determine a body temperature from the forehead temperature. It is a remarkable advance. It's a remarkable inventive concept that he determined that from measuring radiation or temperature at the forehead that you could get to a body temperature. It revolutionized the field of thermometry. Okay. Thank you, Mr. Leamy. We'll save your rebuttal time, and let's hear from the other side. Mr. Devlin. Thank you, Your Honors. Tim Devlin on behalf of Thermomedics. Counsel did something interesting a minute ago that the claims are deceptive in their simplicity. They're not deceptive in their simplicity. They're revealing in their simplicity. They strip away every feature that's described in the 938 patent specification that could impart patentability. There are plenty of other claims in this patent, dozens and dozens of claims. There are other patents in this patent family that have dozens and dozens of additional claims, all of which recite certain additional features, whether they're method steps, whether they're physical components or structures. They recite additional features that could arguably impart patentability. I don't know. They're not an issue here. But these claims strip away all of that, and they each recite only two broad steps without any particular way or reason or structure to do that. Each of those steps in each of the independent claims recites a natural law. Radiation, measuring surface temperature from radiation, has been known for decades in all sorts of fields. The 938 patent admits it. The quote's on page 11 of Apelli's brief. I can recite it if your honors want. The next steps of turning that surface temperature measurement into a body temperature approximation are also known natural laws, and the 938 patent specification says that. It says it's well known to do this. The two claims differ. That is 51 and 54, the two independent claims. They differ in the sense that 51 is- I'm not sure that if they put the calculations in the claim, that that wouldn't have been patentable. The problem is that the algorithm and the calculation, the calculational methodology which they say they arrived at is not part of it. That's right, Your Honor. I mean, there are any one of a number of features that, when recited, might impart patentability. And you can entertain a whole sort of set of hypotheticals about whether it would do it or not to write in the equations here to limit the specific variables you're using as opposed to other potential variables or other potential constants that you would use in applying those variables. There's no doubt that some work went into figuring out how one could obtain a surface temperature by measuring infrared radiation. But that work was done decades and decades ago by others. And there's no doubt there was a lot of work involved in figuring out how the surface temperature of a part of your body, be it the tympanic membrane, which is well known, or forehead, which was well known as we talked about in that brief, how you can convert that into an approximation of a body temperature such as you would normally get from an oral thermometer or rectal or armpit. But all of that work was already done. All of this stuff is simply well known laws of nature. You can't save a claim, as Mr. Lehman said, by saying, well, the latter step uses the law of nature. I don't even know what else to say here. There are multiple Supreme Court cases that we can trace. If we look at Diamond v. Deere, it has nothing to do with the fact that it happens to recite. I shouldn't say nothing to do with. If you look at Mayo, Mayo articulates why Diamond v. Deere is patable because it recites many, many other features. You're continuously monitoring the temperature of something. You're actually using physical components. It involves a transformation of matter in the claim. All of that's recited. That's the type of recitation that saves Deere. There are other cases that show the same thing. Myriad, I think, is probably the case that's most on point here because the facts of it, in the overall scope of the case, mirror what's happening here. Myriad Court said, hey, there are a lot of claims here that might satisfy the 101 patentability standards. There are a lot that are. They just didn't happen to be the ones that were asserted. The only ones that were asserted in that case were much broader and stripped away all of the elements that imparted patentability. The same thing is true here. Thermometers that are accused of infringement, while infringement's not an issue, it's useful to note that the thermometers that are accused of infringement don't include any of those new innovations that the 938 patent specification describes as giving you a better forehead temperature reading. Scanning across the forehead to find the right artery, the temporal artery. Taking multiple readings per second so that as you scan you can make sure you find it. Finding the peak reading which indicates you're there at the temporal artery. The physical components that help and assist that scanning. None of those things are recited here. These claims strip away all of that. And the reason that it's only these claims that are asserted here is because none of those other features are in the accused product. So, Exeget had to rely on these broadest claims. I haven't examined the timelines, Your Honor, but I would bet that the types of thermometers that are accused of infringement here were out and in existence before the 938 patent claims at issue here were introduced. Then there's a continuation case, so the specification existed quite some time, this patent, before the accused products here existed. But the claims may not have. Doesn't matter, though. These claims were the only ones that could be asserted. They're incredibly broad. They strip away all the features that could impart patentability. Whether those features are conventional or whether they're not. Whether they're new or whether they're old. There are no recited features in these two claims apart from the natural laws that involve taking radiation and converting that into a surface temperature measurement, and then taking a surface temperature measurement and converting that into an approximation of a body temperature. That's it. That's all the claims recite. That's Claim 54, which is restricted to radiation. Claim 51, I'll note, is even broader than that. It says, in the first step, you just take a surface temperature. That surface temperature could be done in the same way, by looking at radiation and converting that to the surface temperature, or it could be done by the old hand to the forehead. Just touching it and having heat actually flow directly from contact surface to contact surface. Your Honor, the Court has no further questions. Okay. Thank you.  Thank you, Mr. Devlin. Mr. Lehman. I just want to respond to Mr. Devlin's comments about the fact that there was anything about this claim that was well known before this invention came about. The fact is that what he's relying on, as explained in his brief, was earlier patents of exogen that are not at issue in this case, and he is using 102 arguments to suggest that there's nothing new about the 938 patent claims at issue here. But, in fact, 102 is an impermissible inquiry when discussing 101, and the Supreme Court has repeatedly warned against shifting the eligibility inquiry to Section 102. And the Deere case specifically said that novelty under Section 102 stands wholly apart from whether the invention qualifies as statutory subject matter. That's a downstream consideration once you've determined whether a claim is eligible or not. And there are many factual issues that his anticipation argument raises. Those earlier exogen patents... He's not raising an anticipation issue. It's a patentable subject matter issue. It's a patentable subject matter issue. It's not an anticipation issue. The fact is that fully half of his brief is devoted to 102 issues, and he talks about the earlier patents and how they prefigure the invention of this claim. The fact is that the earlier claims never used the word temporal artery. They never used the word forehead. It was simply not known to a person skilled in the art, based on those earlier exogen patents, that body temperature approximation could be derived from a simple measurement of radiation or temperature of the forehead. That is the inventive concept that our inventor introduced with this patent. Okay. Thank you. Thank you, Mr. Lehman. Thank you, Mr. Devlin. The case is taken under submission.